[Cite as *State v. Reynolds*, 2023-Ohio-3873.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                    :

    Plaintiff-Appellee,              :

                              No. 112139

    v.                                           :

MAURICE REYNOLDS,                        :

    Defendant-Appellant.            :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 26, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-655097-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Glen Ramdhan and Rachel Cohen, Assistant Prosecuting Attorneys, *for appellee*.

Edward M. Heindel, *for appellant*.

MARY EILEEN KILBANE, P.J.:

{¶ 1} Defendant-appellant Maurice Reynolds ("Reynolds") appeals from his guilty plea and sentence for sexual battery and other offenses allegedly committed against his granddaughters. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} On December 17, 2020, a Cuyahoga County Grand Jury indicted Reynolds on two counts of rape in violation of R.C. 2907.02(A)(1)(b), with furthermore clauses specifying that one victim was between the ages of ten and thirteen at the time of the offense; one count of kidnapping in violation of R.C. 2905.01(A)(4); two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4); two counts of endangering children in violation of R.C. 2919.22(B)(1); two counts of endangering children in violation of R.C. 2919.22(A); two counts of gross sexual imposition in violation of R.C. 2907.05(A)(5); and two counts of gross sexual imposition in violation of R.C. 2907.05(A)(1). The counts also carried a variety of specifications.

{¶ 3} Reynolds initially pleaded not guilty to the indictment.

{¶ 4} On July 22, 2021, the court held a change-of-plea hearing. The assistant prosecuting attorney placed the terms of the plea agreement on the record as follows: Reynolds would plead guilty to one count of sexual battery in violation of R.C. 2907.03(A)(5), a felony of the second degree; one count of abduction in violation of R.C. 2905.02(A)(2), a felony of the third degree; two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), felonies of the third degree; one count of endangering children in violation of R.C. 2919.22(A), a felony of the third degree; and two counts of gross sexual imposition in violation of R.C. 2907.05(A)(5), felonies of the fourth degree. The remaining counts and all specifications would be dismissed as part of the plea agreement.

**{¶ 5}** With respect to merger, the following exchange took place:

> ASSISTANT PROSECUTING ATTORNEY ("APA"): Part of the plea is that they're non-allied offenses of similar import, but if the Court at sentencing decides that things do merge, you do have the option to decide that.
>
> THE COURT: The state and defense will argue that at the time of sentencing.

With respect to sexual offender registration, the assistant prosecuting attorney stated that some of the offenses were Tier II offenses, but those would be "overtaken" by the sexual battery offense, which was a Tier III offense. Defense counsel confirmed that this was his understanding of the plea agreement, and the court proceeded to engage Reynolds in a Crim.R. 11 plea colloquy.

**{¶ 6}** As part of the plea colloquy, the court outlined the maximum potential penalties Reynolds faced as follows:

> THE COURT: And I believe it's your intention to plead guilty to Count 1 as it's amended, amending it to a felony of the second degree, sexual battery, in violation of 2907.03(A)(5). That would mean that you would be a Tier III mandatory registrant, and that would mean that you would—and I'll go through that with you, but that means that you would have to register for your lifetime with in-person verification every 90 days. And do you understand that?
>
> REYNOLDS: Yes.
>
> THE COURT: As a Tier III registrant?
>
> REYNOLDS: Yes.
>
> * * *
>
> THE COURT: And under Counts 4 and 5, you would be a Tier II offender, which means that you would have to register for a period of 25 years with in-person verification every 180 days; however, since

Count I is a Tier III, that is for your lifetime. So do you understand that?

REYNOLDS: Yes.

The trial court, satisfied that Reynolds was entering a knowing, intelligent, and voluntary plea, accepted Reynolds's guilty plea to the offenses outlined above. The court referred Reynolds to the probation department for preparation of a pre-sentence-investigation report.

{¶ 7} On August 12, 2021, the court held a sentencing hearing. With respect to merger, the following exchange took place:

THE COURT: All right. And before we move forward, I do believe that at the time of the plea the State and defense agreed to argue the issue of merger.

APA: Correct, Your Honor. The plea was that the items that Mr. Reynolds pled guilty to did not merge, but we did agree that we would argue that, yes.

THE COURT: Do you wish to argue that now?

DEFENSE COUNSEL: Very briefly, Your Honor, GSI and sexual battery are the same act. And the endangering is the same act. And the abduction is the same act. One mens rea, one culpable mental state, one incident, one victim. Those all merge from my perspective.

The second case, Your Honor, is a GSI and endangering for the second victim. Those would merge together, but not merge with the other victim, if you follow what I'm saying.

THE COURT: So there's Count 4 and 5 are gross sexual imposition, and Counts 8 and 10 are gross sexual imposition.

DEFENSE COUNSEL: Right. All the counts for the same victim from my perspective would merge, but they don't merge with the other victim because there's two separate victims.

THE COURT: So Count 1, are you suggesting would merge with one of the gross sexual imposition counts.

DEFENSE COUNSEL: That's correct. And abduction is part and parcel, it's no different than a rape and kidnapping. This was not where somebody was moved from one place to the other. You can't commit the act without holding the person down. That's why they always merge unless the person is in a trunk and take them to another location. It's no different than a—abduction is just a lesser included of kidnapping, and kidnappings always merge with the rape unless there's a separate animus. So that seems like a throw away it's pretty clear.

GSIs are a lesser included of the sexual battery. The endangering children, I understand that [the prosecutor] may say they don't merge because it's alleged that my client permitted the two children to consume drugs and alcohol. So if that's the endangering, then perhaps they don't merge. But if the endangering is having a sex act, then I think they would merge. And then GSIs I think all merge as to each victim.

THE COURT: So then under your argument, the defendant would only be sentenced on two counts?

DEFENSE COUNSEL: That's correct.

THE COURT: Potentially.

DEFENSE COUNSEL: Yes.

THE COURT: Then the State would elect which counts?

* * *

APA: Your Honor, just for clarity, Counts 1, 3, 4, and 5 are victim 1, so to speak. Count 7 is both victims. And Counts 8 and 10 are victim 2. All right.

So Count 1, the sexual battery, for sexual conduct, the testimony would have been from that victim of oral sex, of vaginal sex, of other things such as that nature. So that's why we would argue sexual battery encompasses that kind of sexual conduct, in loco parentis, this is the victim's grandfather.

The abduction, restrained the liberty of the victim. The victim would have testified that she tried to leave the bedroom and he did not let her

leave, kind of pushed her back down, put his hand over her mouth, and forced her to be quiet. This is all separate conduct we're arguing.

Counts 4 and 5 is GSI, touching vagina, Count 5, GSI touching breast. The testimony and the evidence would have been that all of these things happened separately, it all wasn't at the same time. That he took her into the bedroom, touched her vagina, touched her breasts, Count 4 and 5, separate things. And then it was oral sex and vaginal penetration, which would be Count 1, the sexual battery.

Like I said, the abduction would have been covering her mouth, kind of holding her down, not letting her speak and call out to her sister, who was also in the other room, and restraining her liberty in that sense.

Count 7, Your Honor, we amended to include both victims, endangering children. That would be to evidence that this defendant gave both his granddaughters alcohol and marijuana and then their drug labs came back. They also had amphetamines in their system, and one of the girls actually also had cocaine in her system. So that endangering is completely separate for all of these substances in their system.

Counts 8 and 10 is for the second victim, the other granddaughter, and the evidence would have been that he separately touched her vagina and then separately touched her breasts. So we would argue that none of these counts merge.

{¶ 8} After hearing the parties' arguments as to merger, the court found that the gross sexual imposition and sexual battery counts were not allied offenses and therefore would not merge for sentencing. The court further found that the abduction occurred simultaneously with the sexual battery and therefore those offenses would merge; the state elected sexual battery for purposes of sentencing.

{¶ 9} Defense counsel, Reynolds, and the assistant prosecuting attorney then addressed the court. The assistant prosecuting attorney also read a letter from the mother of one of the victims. The court ultimately sentenced Reynolds to a total

aggregate term of 12 to 15 and one-half years.  The court also imposed five years of postrelease control and classified Reynolds as a Tier III sexual offender.

{¶ 10} Reynolds appeals, presenting two assignments of error for our review:

> I. The trial court erred when it failed to merge Counts 1, 4, and 5.  These were allied offenses of similar import.

> II. The trial court erred when it provided confusing and inconsistent advice on points of law.  These errors made [Reynolds's] plea unknowing, involuntary, and unintelligent.

**Law and Analysis**

**I. Merger**

{¶ 11}  In his first assignment of error, Reynolds argues that the court erred when it declined to merge Counts 1, 4, and 5.  Reynolds argues that because the sexual battery and gross sexual imposition counts were all part of the same act against the same victim, and they all occurred at the same time, they should have merged.

{¶ 12}  R.C. 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 13} Generally, we review de novo whether certain offenses should be merged as allied offenses under R.C. 2941.25. *State v. Bailey*, Slip Opinion No. 2022-Ohio-4407, ¶ 6, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 1. "Although determining whether R.C. 2941.25 has been properly applied is a legal question, it necessarily turns on an analysis of the facts, which can lead to exceedingly fine distinctions." *Id.* at ¶ 11. Specifically, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, we consider three questions: ""'(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? (3) Were they committed with separate animus or motivation?'"" *Bailey* at ¶ 10, quoting *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12, quoting *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31. If the answer to any of these questions is yes, separate convictions are permitted. *Id.*

{¶ 14} Relevant to this assignment of error, Reynolds was convicted of sexual battery in violation of R.C. 2907.03(A)(5) and gross sexual imposition in violation of R.C. 2907.05(A)(4). R.C. 2907.03(A)(5), sexual battery, provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * the offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person." R.C. 2907.05(A)(4), gross sexual imposition, provides that "[n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or

more persons to have sexual contact when the other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."

{¶ 15} Reynolds argues that with respect to the conduct constituting Counts 1, 4, and 5 — oral sex and vaginal sex, touching the victim's breast, and touching the victim's vagina — the record was not developed enough to determine how far apart in time these acts occurred. The state argues that their recitation of the facts established that these acts took place at different times.

{¶ 16} A court's merger analysis takes place as part of the sentencing process, which "is less exacting than the process of establishing guilt." *State v. Garvin*, 8th Dist. Cuyahoga No. 100165, 2014-Ohio-1726, ¶ 14, quoting *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 14, citing *Nichols v. United States*, 511 U.S. 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994). "Therefore, this process can easily be satisfied by a brief recitation of facts or circumstances by the prosecutor to aid the trial court in its determination," and "[n]othing more should be required." *Id.*

{¶ 17} Moreover, regardless of the length of time separating the various acts, the fact that each offense involved a different sexual act precludes merger. *State v. Wilk*, 8th Dist. Cuyahoga No. 110751, 2022-Ohio-1840, ¶ 68. This court has consistently held that "[s]eparate sexual acts are separate and distinct crimes and are not allied offenses." *Id.*, citing *State v. McSwain*, 8th Dist. Cuyahoga No. 105451,

2017-Ohio-8489, ¶ 45, citing *State v. Nicholas*, 66 Ohio St.3d 431, 435, 613 N.E.2d 225 (1993).

{¶ 18} Therefore, the trial court did not err when it declined to merge Counts 1, 4, and 5 for sentencing because they are not allied offenses of similar import. Reynolds's first assignment of error is overruled.

**II. Guilty Plea**

{¶ 19} In Reynolds's second assignment of error, he argues that the trial court erred when it provided confusing and inconsistent advice on certain points of law and that doing so rendered Reynolds's plea unknowing, involuntary, and unintelligent.

{¶ 20} In *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, the Ohio Supreme Court addressed a trial court's compliance with Crim.R. 11(C) and the method of reviewing a trial court's plea colloquy to ensure that a defendant's plea is knowingly and voluntarily entered. The *Dangler* Court identified the questions to be asked when reviewing a trial court's Crim.R. 11(C) plea colloquy:

> (1)[H]as the trial court complied with the relevant provision of the rule? (2) if the trial court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Id.* at ¶ 17. But for two exceptions, a defendant is not entitled to have his or her plea vacated unless the defendant demonstrates prejudice by the trial court's failure to comply with Crim.R. 11(C). *Id.* at ¶ 16. The first exception occurs when "a trial court fails to explain the constitutional rights [set forth in Crim.R. 11(C)(2)(c)] that a

defendant waives by pleading guilty or no contest[.]" *Id.* at ¶ 14. No showing of prejudice to the defendant is required under this first exception. In contrast, if a trial court fails to fully cover "nonconstitutional" aspects of the plea colloquy, a defendant must affirmatively show prejudice to invalidate a plea. *Dangler* at ¶ 14, citing *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 17. The second exception occurs if there is a complete failure by the trial court to comply with a portion of Crim.R. 11(C). *Id.* at ¶ 15. When a trial court completely fails to comply with the rule, the defendant need not show prejudice. *Id.*

{¶ 21} Reynolds asserts that three separate aspects of the court's Crim.R. 11 colloquy rendered his guilty plea unknowing, unintelligent, and involuntary, because the court provided unintelligible advice. First, Reynolds points to the trial court's statements regarding his sexual offender registration requirements. The trial court informed Reynolds that pleading guilty to Count 1 meant that Reynolds would have to register as a Tier III sexual offender every 90 days for the rest of his life. Reynolds confirmed that he understood this. The trial court separately informed Reynolds that Counts 4 and 5 were Tier II offenses and therefore had different registration requirements, and Counts 8 and 10 were Tier I offenses that also had different registration requirements. Reynolds confirmed that he understood his registration requirements.

{¶ 22} Next, Reynolds asserts that the trial court "muddied the waters" regarding the terms of his postrelease control when it explained again that different offenses involved different terms of mandatory postrelease control. Our review of

the record shows that the trial court accurately informed Reynolds that his sentence would include a mandatory five-year period of postrelease control, and Reynolds again confirmed that he understood this.

{¶ 23} Finally, Reynolds argues that the trial court added to his confusion by stating that if Reynolds pleaded guilty, the court could proceed directly to sentencing. This is accurate information, and Reynolds has failed to identify how exactly this statement violated Crim.R. 11.

{¶ 24} Because none of these instances reflect a failure to comply with Crim.R. 11, we cannot conclude that Reynolds's plea was somehow unknowing, unintelligent, or involuntary. The trial court engaged Reynolds in a thorough and complete Crim.R. 11 colloquy, and Reynolds repeatedly confirmed to the court that he understood the consequences of pleading guilty. Therefore, Reynolds's second assignment of error is overruled.

{¶ 25} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
MARY J. BOYLE, J., CONCUR